### ELISHA JENNE v. HUBBARD JOSLYN.

#### *Evidence. Fraud. Practice.*

It is of no consequence in what order evidence is introduced, so far as its ultimate le gitimacy is concerned, provided, in its relation to the other evidence in the case, it is, in the end, pertinent to the issue.

Under a claim that the defendant's purchase of the chattel in question was fraudulent, it was *held* that the vendor's account of the transaction at the time, tending to show the fraud claimed by the plaintiff, was rendered pertinent as evidence by further testimony afterward introduced by the plaintiff, tending to show that the defendant and his vendor were colluding together in respect to said chattel, for the purpose of perpetrating a fraud on creditors.

When evidence is given showing collusion, combination and co-operation, between parties, for the accomplishment of an unlawful purpose, it is competent to give evidence of what either party says in connection with acts in furtherance of that common purpose, and it will operate against either of the colluding parties.

TROVER for a one horse wagon. Plea, the general issue. Trial by jury, December term, Orleans county, 1866, PECK, J., presiding.

The defendant admitted the taking of the wagon a few days after the plaintiff had attached and removed it.

The plaintiff, previous to the taking of the wagon by the defendant, had attached it as an authorized person, on a writ in favor of one Tolman Jenne against Joseph W. Steele, about the 30th of March, 1863. The suit was entered in court and judgment obtained for the plaintiff, and execution issued thereon and delivered to the plaintiff in season to preserve the lien. No question was made but that the judgment and proceedings and the officer's proceedings were regular. The plaintiff demanded the wagon of the defendant before the suit was commenced, and the defendant refused to deliver it, claiming it as his own.

The plaintiff gave evidence tending to show that when he attached the wagon he took it from the premises of J. W. Steele and moved it to a blacksmith's shop in Derby, where it was taken by the defendant.

The defendant gave evidence tending to prove that in June, 1861, one Solomon Steele sent to the manufactory of Miller & Trull, in Lyndon, for this wagon, and that J. W. Steele, his son, arranged with Miller & Trull to pay them for the wagon, and took it to his father's, in Derby, and delivered it to him, and his father then paid him for the wagon by indorsing the amount paid for it on a note which he held against said J. W. Steele; that Solomon Steele kept the wagon and used it until sometime in the spring of 1862, when his son, Joseph W., informed him that he had disposed of a wagen which the defendant had sometime previously bought at sheriff's sale on an execution in favor of said Solomon Steele v. Joseph W., and which the defendant had let said Joseph W. have with directions to sell it for the defendant for cash or approved credit, and that he, Joseph W., had let Miller & Trull have it to apply on what he, Joseph W. Steele, was owing them, and that Joseph W. requested his father to arrange the matter with the defendant by letting the defendant have the wagon now in suit, and that J. W. Steele told the defendant that Solomon Steele would so settle it with him, and the defendant went and saw Solomon Steele and the wagon in suit, and agreed to take it, Solomon Steele's wagon, in place of the one disposed of by Joseph W.; the defendant and Solomon Steele having so agreed, the defendant left the wagon at Solomon Steele's in Solomon Steele's possession. Sometime after, in the following June, Joseph W. had advertised certain property, or was contemplating a sale at public auction of some lumber, harnesses, and other property at J. W. Steele's mill, and the defendant requested him to take this wagon from Solomon Steele's and advertise it with the other property, and if it sold for a certain price named, to let it go, but if not, to get some one to bid it in for the defendant. The wagon was sold at that auction sale to one Joseph Bates, 2d, but he refusing to pay for it, it was, by direction of the defendant, taken back by said Joseph W. into his possession, with di-

rections to sell it at private sale for the defendant. This was the summer before the plaintiff attached it. The defendant's evidence tended to show that he bid off the wagon that Joseph W. Steele let Miller & Trull have as above stated, at the sheriff's sale on execution in favor of Solomon Steele *v.* Joseph W. Steele, in 1861, with a little other property, and paid the price to the officer who sold it or to the creditor on the execution; that he bid it off at the request of J. W. Steele, but that there was no agreement that J. W. Steele should have the wagon; that the wagon was his, the defendant's, by the purchase, and remained so, but that after he bid it off, he agreed with J. W. Steele that it might remain in his possession for the time being, and that he might use it and pay him, the defendant, for the use of it; that it remained in J. W. Steele's possession till said Steele let Miller & Trull have it, as before stated; and that he never authorized J. W. Steele to let Miller & Trull have it or to dispose of it in any other way than to sell it for cash or a good note, as agent for the defendant.

The plaintiff claimed that all these transactions and arrangements were fictitious and simply to defraud the creditors of J. W. Steele, (who had failed in the fall of 1861), and that the wagon in suit, as well as the other wagon, was always the property of J. W. Steele. And as tending to prove this, the plaintiff, who was a witness for the plaintiff, swore, against the objection of the defendant, that Joseph W. Steele came to him with an auction bill or advertisement (which the plaintiff had hunted for and could not find), which was printed with J. W. Steele's name printed at the bottom; that the substance of which was that the subscriber would sell at his mill yard such and such property on such a day, naming it; that the property was enumerated, and the advertisement was signed by J. W. Steele (printed signature); that the property enumerated was a horse, sleigh, buffaloes, harnesses, lumber and other property, and this wagon; also that J. W. Steele requested him to act as auctioneer in selling the property in that bill; that knowing that a part of the property enumerated had been previously sold at auction at a sheriff's sale, he inquired of J. W. Steele about it, and that said J. W. Steele told the plaintiff that a good part of this property was property that had

been bid off by different parties for his benefit, and that he had so far arranged his business that if he could sell this property and get the money for it, and pay up as far as it would go, he thought he could arrange and go along with his business.

The court *pro forma* admitted the evidence; to which the defendant excepted.

The plaintiff further testified that he did act as auctioneer and sell the property at the time mentioned in that advertisement for the sale; that this was the same auction sale spoken of in the defendant's testimony, at which the wagon in suit was sold to Bates as heretofore stated.

The defendant's objection to the testimony above stated was to proving the contents of that auction bill, (but not on the ground that it should be proved by production of the auction bill, as it appeared that it could not be found), and also to the admission of Joseph W. Steele's declarations as to the title to the property, as to its having been bid off for his benefit, etc., and all he said on that subject; which objections the court, as before stated, overruled *pro forma*, to which the defendant excepted.

After this evidence was introduced, the plaintiff introduced further evidence tending to show that the defendant's claim to the property was collusive and fraudulent, and that question was submitted to the jury. Verdict for the plaintiff.

*Dale & Robinson* and *J. T. Allen*, for the defendant.

The defendant did not acquire his title to the property in question from J. W. Steele, but from Solomon Steele, therefore J. W. was neither in interest nor in the chain of title. The admissions of a person not a party are not evidence, unless he is interested in the suit and unless his interest is identical with the party to the suit. *Warner et al.* v. *McGarey*, 4 Vt., 510. Here the interest of Steele in making a declaration was antagonistic to the defendant, and the plaintiff proposes by a saying of Steele to divest the defendant of his title, and invest it in Steele. This is not an admission against the interest of Steele, but a claim in his favor.

31

But suppose the defendant had derived his title to the wagon from J. W. Steele; then we say that the admissions of the vendor are not admissible against the vendee after the sale. *Bullard* v. *Billings*, 2 Vt., 309; *Clarke* v. *Waite*, 12 Mass., 439.

If the admissions are sought to be given in evidence on the ground that Steele was the defendant's agent, then we say they were not made within the line of his authority, because he only had authority to sell the wagon. *Hines & Kellogg* v. *Soule*, 14 Vt., 99. The declarations of an agent respecting a transaction which are not made till after it is past, are not admissible in evidence against his principal. *Stiles et al.* v. *Western R. R. Corp.*, 8 Met. 44.

These sayings were not a part of the *res gestæ*, neither in the light of agency nor any other.

If the plaintiff claims the sayings to be confessions, we say J. W. Steele can only confess for himself, and not for another. They are not admissible upon the question of fraud. *Woodruff* v. *Whittlesey*, Kirby, Conn., 60, *McKenzie* v. *Hunt et al.*, 1 Porter (Ala.), 37, put it on the ground that Steele was a witness, and his admissions were only evidence to impeach his testimony and not to establish a fact. In *Thompson* v. *Mawhinny*, 17 Ala., 362, it is declared that the sayings may be admitted to explain the *nature of the possession*, but not as proof of the terms of the trade under which the possession is held, or the means by which the possession was acquired. *Humphries* v. *McCraw*, 4 Eng. (Ark)., 91, is a case every feature of which resembles this case. And in *Smith's admr.* v. *Betty*, 11 Grattan (Va.), 752, the court exclud ed the sayings of the vendor to impeach the good faith of the sale. *Alexander* v. *Mahon*, 11 Johns. (N. Y.), 185; *Horrigan* v. *Wright*, 4 Allen, 514; *Weidman* v. *Kohr*, 4 Serg. and R. (Penn.), 173; *Ferguson* v. *Staver*, 33 Penn., 411; *Paige* v. *O'Neal*, 12 Cal., 483.

These sayings are inadmissible by reason of their uncertainty. *Watson* v. *Byers*, 6 Ala., 393. The plaintiff has not laid the foundation for the admission of this evidence.

*Edwards & Dickerman*, for the plaintiff.

The declaration of J. W. Steele tended to show fraud in himself in the sheriff's sale, and in order to show fraud in Joslyn, and that the transaction was merely colorable, it is necessary to show fraud in Steele, as fraud could not be attributed to Joslyn unless it entered into the conduct of J. W. Steele; and his declarations, while he was in possession of the property, are admissible for this purpose. Joslyn had never had possession of the property; it had always remained in the possession of J. W. Steele up to the time of the attachment by the plaintiff, and J. W. Steele's declarations, accompanied with his acts of possession and ownership, are a part of the *res gestæ* and are admissible. *Carpenter* v. *Hollister*, 13 Vt., 552.

The order in which the testimony objected to was put in does not render it inadmissible. If admissible under any circumstances, or for any purpose, the judgment must be affirmed.

The opinion of the court was delivered by

BARRETT, J. As no exception was taken to the charge, the only question is, whether the evidence that was objected to was admissible in any aspect of the case. It is of no consequence in what order evidence is introduced, so far as its ultimate legitimacy is concerned, provided, in its relation to the other evidence in the case, it is, in the end, pertinent to the issue. There is a single view of the case which seems to be decisive. The plaintiff claimed a right to the possession of the property by virtue of the attachment and execution named in the exceptions, against J. W. Steele. The defendant claimed to own it by purchase at a sale on another execution against said Steele. The plaintiff alleged that sale to be fraudulent as against the creditors of Steele. After said sale Steele had the property in his possession by permission of the defendant, with authority to sell it, in connection with other property of Steele, at an auction sale in which the plaintiff was to be the auctioneer. In negotiating with the plaintiff in respect to such sale to be made by him as auctioneer, the conversation occurred in which Steele said the things as to which the evidence was given that is now brought in question. After that evidence was given, "the plaintiff introduced further evidence tending to show that

the defendant's claim to the property was collusive and fraudulent, and that question was submitted to the jury." This is tantamount to saying that the further evidence tended to show that the defendant and Steele were colluding together in respect to that property for the purpose of perpetrating a fraud on creditors.

. This state of the evidence rendered the evidence of what Steele said pertinent, not only as bearing on the subject and question of fraudulent intent in himself, but also of fraudulent intent and act on the part of the defendant. It is well settled, and even elementary, that, when evidence is given showing collusion, combination and co-operation between parties, for the accomplishment of an unlawful purpose, it is competent to give evidence of what either party says in connection with acts in furtherance of that common purpose, and it will operate against either of the colluding parties. Such evidence would, of course, elicit proper instructions to the jury as to its legal quality and proper operation, in view of its substance and the relation it should bear to the other evidence in the case. As before remarked, it is assumed that all proper instructions were given in the present instance.

This case is to be distinguished from that of *Ellis* v. *Howard et al.*, 17 Vt., 330, and a large number of cases of a similar character in the books, many of which were cited in the argument, in which the sayings of the vendor or agent, sought or allowed to be proved, were made after the alleged sale or the alleged agency had transpired, or where the alleged agent had departed from his authority in what he was doing, in connection with his alleged sayings. In those cases, other evidence was not given tending to show collusion, and that the sayings in question were made in connection with the doing of acts in furtherance and consummation of the common unlawful intent of the parties. In *The State* v. *Thibeau*, 30 Vt., 100, the law of the subject as applicable to this case is well stated by ALDIS, J., and the distinctions are clearly marked. See 1 Greenl. Ev., § 111; also the remarks of HOAR, J., in *Lynde et al.* v. *McGregor*, 13 Allen, 179, 180.

This view relieves us from considering a nice question involved in many of the cases cited, as to when the sayings of an agent, or of a person in possession of property, are to be regarded as of the *res gestæ*, so as to render such sayings admissible.

Judgment is affirmed.