JAMES QUINN *v.* JULIUS HALBERT.

*Agent. Evidence. Fraud. Change of Possession. Witness Dumb.*

1. The property in dispute having been purchased by D. of the assignee of his own insolvent estate, the question being whether the plaintiff or D., the execution debtor, was the owner, and this turning on the question whether D. bought it for himself or as the plaintiff's agent, the assignee and his attorney were witnesses, and what D at the time of the sale did, or said, or failed to say, as to his agency, was evidence in chief.

2. Also, all the actings and doings of the parties with the property, both before and after it was replevied, and its avails, are admissible as evidence, the goods being in the possession of the former owner, and it being claimed that the sale to the plaintiff was fraudulent as to creditors,—that it was a sale to D. personally, and not as the agent of the plaintiff.

3. After the purchase of the goods the plaintiff furnished D. three hundred dollars, which were used to buy new goods to keep up the stock. In about a month D. paid the plaintiff three hundred and fifty dollars and took this writing: "Received of Wm. Doran three hundred and fifty dollars cash, *loaned* to purchase goods." The plaintiff claimed that a part of the goods purchased with this money was included in his attachment. *Held,* that the receipt was *prima facie* evidence that the money was *loaned.*

4. It was material to distinguish between the goods first purchased by D. of the assignee and what was subsequently bought in market to keep up the stock. The testimony of the parties who inventoried the goods after the attachment, who had long experience in the same branch of trade, as to, particular marks and figures on the bills, which were in accord with the *general custom* of the trade, by which they identified certain goods of the last lot, was admissible.

5. The plaintiff was a legal witness, though *dumb, uneducated in the use of signs,* and only able to assent or dissent in answer to a direct question by a nod or shake of the head; but the disability detracts from the weight of the testimony, and the jury should have been so instructed.

REPLEVIN for a quantity of clothing. Trial by jury, April Term, 1881, Franklin County, ROYCE, J., presiding. Verdict for plaintiff. The facts are sufficiently stated in the opinion of the court, and in the 52 Vt. 353, where this case is reported.

*Wilson & Hall, H. R. Start* and *Farrington & Post* for the defendant.

The plaintiff being *dumb* is not a witness. 1 Whart. Ev. s. 405; 1 Phil. Ev. p. 10; 2 Ib. 883, n.; 8 Cow. 92; 1 Denio, 19. Twigg should have been permitted to testify as to the object, use, and purpose of the numbers in the first column of the bills and inventory. It was not the custom or usage of a particular house or person but of the trade. Twigg and Doran were both doing business in the same line of goods as merchants, and were subject to the same customs and methods and way of doing business and buying and receiving goods. It tended to demonstrate beyond a doubt that the one hundred and forty-two dollars worth of new goods were purchased on the bill of March 28th, 1878. *King* v. *Woodbridge*, 34 Vt. 566–574; *Laurent* v. *Vaughn*, 30 Vt. 90–94; *Brown* v. *Hitchcock*, 28 Vt. 452–457; 2 Greenl. Ev. ss. 249, 250, 252; 2 Phil. Ev. 788, n.; *Lindsley* v. *Lovely*, 26 Vt. 123. Farnsworth's testimony admissible. *Richardson* v. *Royalton & W. Turnpike Co.*, 6 Vt. 496, 503; *Kimball* v. *Locke*, 31 Vt. 683, 684; *Houghton* v. *Clough, et al.*, 30 Vt. 312; *Beattie* v. *Grand Trunk R. R.*, 41 Vt. 275; *Seward* v. *Garlin*, 33 Vt. 583–592; *Cady* v. *Owen*, 34 Vt. 598.

*H. S. Royce*, for plaintiff.

Plaintiff a legal witness. 1 Greenl. Ev. 366–435; *Hopkins* v. *Steel*, 12 Vt. 582; 21 Vt. 439. It has been decided by this court that the inventory made by Branch and Twigg was not admissible. *Quinn* v. *Halbert*, 52 Vt. 353.

The opinion of the court was delivered by

REDFIELD, J. This action is replevin for goods attached by defendant, as an officer, as the property of Doran. The plaintiff claims that he owns the goods by purchase of Doran's assignee in

bankruptcy. The defendant claimed that the purchase from the assignee was really the purchase of Doran and not the plaintiff; 2d, that if the plaintiff purchased the goods in form, the transaction was collusive and fraudulent as against the creditors of Doran; and that if plaintiff loaned money on the security of the goods, the lien was invalid for the want of a record; 3d, that a portion of the goods was purchased in market after the purchase of Doran's assignee, and, as the defendant claims, with Doran's money.

I. The assignee Farnsworth was offered as a witness to prove that he sold the goods to Doran, and in the negotiation and purchase the plaintiff's name was not mentioned, and no intimation made by Doran that he was not purchasing for himself. This testimony was excluded, for the alleged reason that no foundation had been laid for the testimony by an enquiry of Doran. If the testimony was admissible only to impeach the witness Doran, there was no error in its exclusion. But Doran bought and sold the goods, and, as he now claims, as agent for the plaintiff, and the issue was whether his acts and doings were those of an agent or owner of the goods; and this evidence bore directly on the issue, and was evidence in chief; and so far as it contradicted the testimony of Doran, it could properly be used by way of impeachment. The exclusion of this evidence was, therefore, error.

II. The defendant proposed to enquire of Doran, on cross-examination, in regard to the sale of the balance of the goods replevied in the winter of 1880, the amount of the sales, and the manner of conducting the business, and said testimony was excluded. The defendant, as an attaching officer, represented the creditors, and the property attached by defendant had been formerly owned by the debtor, and was found in his possession, being disposed of by him; the plaintiff claims to be owner of the property by purchase, though never in his possession. The defendant claims that the debtor is the real owner, and that the plaintiff's purchase is collusive, and fraudulent as against the rights of the creditors.

The manner of conducting the business, and the method of disposing of property thus situated, whether it be consonant with an agent selling property for a principal, to whom he should account, or that of an owner selling goods for himself, all the actings and doings of the parties with the property and its avails are admissible as evidence to be weighed by the jury in determining the character and quality of the title in dispute. The exclusion of this evidence was, therefore, error.

III. After the purchase of this stock of goods, the plaintiff furnished to Doran $300, which was used to purchase new goods to keep up the stock; and defendant's evidence tended to show that $142.75 in value of goods purchased with said money was on hand, and included in the defendant's attachment; and that said $300 was not furnished by plaintiff to buy goods for himself, but was a loan to Doran. This money was furnished on the 26th of March, 1878, which was used in the purchase of goods on the 28th of the same month. On the 23d of April of the same year, Doran paid the plaintiff $350, for which plaintiff gave his receipt, stating: "Received of Wm. Doran $350, cash *loaned* to purchase goods." The defendant requested the court to charge the jury that the receipt, signed by the plaintiff, was *prima facie* evidence that the sum named therein was a loan by plaintiff to Doran, and subsisted as a debt until paid. We think the construction of the receipt called for in this request is sound law, and should have been complied with; and the omission to do so was error.

IV. The defendant requested the court to charge that the evidence of Hall and Farnsworth tended to show a conditional sale of the goods, and that the receipt tended to show that the money advanced to buy the goods was a loan, and that the plaintiff did not own the goods, but had a lien on them as security for the money loaned. We think these requests should have been complied with. As between the parties to the transaction, the plaintiff had a right to the custody of the goods, whether he owned the property or had a lien on it as security for a debt; but as against

this defendant, who stood on the right of an attaching creditor, a verbal lien on the goods was unavailing.

The omission to charge on this subject, which was a substantial matter on the defence, or comply with the special requests, we think was error.

V. The testimony of Twiggs and Branch we think was admissible. They had long experience in this branch of trade, and by particular marks and figures on the bills, which were in accord with the *general custom* of the trade, they identified certain goods that were attached as belonging to the lot purchased in market after the first purchase from Farnsworth.

VI. The plaintiff was allowed to testify against the objection of the defendant. By some infirmity of the vocal organs he was bereft of the power of speech. He could not explain any proposition, but only assent or dissent in answer to a direct question by a nod or shake of the head. And when asked who owned the goods, he would touch his person to indicate that he was the owner. The defendant claims that as he was deprived of the substantial benefit of a cross-examination of plaintiff, he ought not to be admitted as a witness; and if allowed to testify, his inability to explain the transaction and its incidents in cross-examination should be weighed by the jury as affecting the *credit* of the witness. The court declines so to instruct the jury. The witness was *dumb*, and at common law would not be probably admitted to testify. Modern education has done much to give this unfortunate class of persons the capacity to convey ideas, in many cases with marvelous facility and exactness, by signs and symbols; and such persons are now proper and legal witnesses. The plaintiff was uneducated in the use of signs, and his capacity to convey his ideas to others was very circumscribed and limited. But the tendency of modern times is to permit all persons that have knowledge of matters in litigation and capacity to throw light upon them, whether interested or otherwise, " Jews, Turks and infidels," and allow the jury to consider their relation to the case, and condition as affecting their credit. We think the plaintiff was a legal

witness; but the court should have complied with defendant's request, and called the attention of the jury to the plaintiff's peculiar disability as affecting the weight of his testimony.

The judgment of the County Court is reversed, and cause is remanded.