JAMES QUINN'S ADM'RS v. JULIUS HALBERT.

*Practice. Discretion of Court in Organizing the Jury. Attaching Creditor. Fraud. Acts and Declarations of Confederate. Evidence. Question for Jury.* R. L. s. 816.

1. A wide discretion is allowed the court in organizing the jury; and its rulings will not be revised unless the excepting party show that he has been prejudiced, or the statute infringed; thus, when the court adjourned the first day eleven jurors had been accepted, but five of these were talesmen; on the next day, another panel being present, the court discharged the eleven, commenced *de novo*, and formed a panel from those regularly in attendance; *Held*, that there was no error; that the discretion of the court was reasonably exercised.

2. STENOGRAPHER'S TRANSCRIPT—DUMB WITNESS. A stenographer's transcript of testimony given on a former trial of the same case by a deceased witness is admissible, although the witness was dumb, and the signs made by him were described by the stenographer in words. It was for the jury to determine how much the manner of the reproduction of such evidence lessened its weight.

3. FRAUD—DECLARATIONS OF CONFEDERATE. The goods in question had been owned by D., the execution debtor, and were attached in his possession by the defendant as sheriff. The plaintiffs' intestate replevied them, and claimed that he purchased them of D.'s assignee in bankruptcy, and that he employed D. to sell them as his agent. The defendant claimed that the intestate and D. had collusively combined to defraud his creditors, and had given evidence that strongly supported this claim; *Held*, that the acts and declarations of D., while they were carrying out the scheme; what D. said when in possession and selling the goods, namely, that he was the owner; what he admitted was *a fact*, on an attempt to compromise this suit, that he was the owner of a claim held by the intestate against his estate, and entitled to the dividends; a receipt for $2,000 given by the intestate to D.'s wife just before the bankruptcy proceedings; the fact that D. made unusually large purchases of goods immediately preceding his failure; his letter to a creditor announcing his inability to pay, were admissible in favor of the defendant; and this is so, although the parties represented by the defendant became creditors of D. subsequently to his bankruptcy.

4. But, in such a case, a letter written by D. to a third party after the consummation of the fraud, would not be admissible.

5. The facts, that the intestate procured the goods to be insured, that he frequently visited the store, that the word "agent" was on the sign, were admissible in favor of the plaintiffs.

6. The court should have instructed the jury, that the fact that D. deposited $500 to secure the intestate against costs of this suit *was evidence* of fraud, and that they should weigh it with the other evidence, and determine whether fraud was proved. It was for the court to say what the fact *tended* to prove, and the jury, what it did prove.

REPLEVIN for a quantity of clothing. Trial by jury, September Term, Franklin County, 1883, ROYCE, Ch. J., presiding. Judgment for the plaintiff.

See this case, reported in 52 Vt. 353, and 55 Vt. 224, where the facts, with those in the opinion, are chiefly stated. Doran's bankruptcy occurred in December, 1877, and he was adjudged a bankrupt soon after. The goods in question were attached in October, 1878.

The defendant offered to prove by the witness, Peat, that in the winter of 1880-1, when a suit had been brought to recover the pay for some of the goods which had been sold, Doran told him that he had to bring the suit "in the name of Quinn, although the goods were his,—Doran's." The defendant also offered to prove that "between the 1st of September, 1877, and December 17, 1877, that he [Doran] purchased $7,500 of goods, and put them into the store; that he purchased more than double—nearly treble—of what he had in any other three months of any other year he had been in business." The receipt for $2,000 given by Quinn to Mrs. Doran was dated December 25, 1877. The letter, exhibit E, announcing Doran's insolvency, was dated December 27, 1877. The receipt and letter were offered in evidence; but all of said offers were rejected by the court. The letter to Hawley, Folsom & Martin was dated at Canton, Ohio, September 7, 1881.

Mr. Farrington said to the court in offering the receipt and the testimony in connection with it:

"We offer to show in connection with the receipt that Mr. and Mrs. Doran stated in the winter or spring of 1878, after he was adjudged a bankrupt, that they had no property, had no money, no notes, had nothing due them other than stated in their schedules, or what they had turned

over." * * * * "That this receipt was taken up by Mr. Albert Sowles but a short time—two or three days—before Mr. Doran left; that Doran came to Mr. Sowles with the receipt; talked with him about it; and that Mr. Sowles paid over $1,000 upon that receipt, and gave his due bill for the balance; and that subsequently that amount has been paid by Mr. Sowles, and he holds it to-day, and has proved it against the estate of James Quinn."

The defendant's 13th request was: "That there is no testimony tending to show but that Quinn had been paid the full amount that he paid for the goods, and hence the title of the goods is in William Doran."

*Farrington & Post, H. R. Start, Wilson & Hall,* and *G. A. Ballard,* for the defendant.

The court erred in dismissing the eleven jurors. R. L. ss. 887, 895, 993; *Commonwealth* v. *Stowell,* 9 Met. 572; *Bellows* v. *Weeks,* 41 Vt. 606; *State* v. *Peterson,* Ib. 504; *Plimpton* v. *Somerset,* 33 Vt. 283. It was error to exclude the witness, Peat. *Bucklin* v. *Beals,* 38 Vt. 653. All the evidence offered by the defendant was admissible to show the fraud and collusion between Quinn and Doran. *Quinn* v. *Halbert,* 55 Vt. 224; *Huse* v. *Preston,* 51 Vt. 245; *Richardson* v. *Royalton, &c., T. Co.,* 6 Vt. 496; Big. Fr. 483; 31 Vt. 683; 41 Vt. 478; 2 Aik. 390; 30 Vt. 100; 24 Vt. 525; 22 Vt. 546. There was error in admitting a transcript of Quinn's testimony. 54 Cal. 527; 56 Cal. 119; 82 N. Y. 415; 83 N. Y. 461; 1 Greenl. Ev. s. 163; 55 Vt. 224.

*H. S. Royce, F. W. McGettrick,* and *Noble & Smith,* for the plaintiffs.

It was decided in this case—55 Vt. 224—that the testimony of Quinn was admissible; and it follows that it can be reproduced after his decease. The testimony relating to the insurance, to the word "agent" on the sign, &c., was properly admitted. The offer to prove how many goods Doran purchased a few months before his failure, had no tendency

to show how many, or what goods the intestate purchased of the assignee; nor how the goods so purchased were concerned in this suit. The receipt was properly excluded.

It would seem that that receipt or obligation was pledged by Mrs. Doran to Sowles or the bank for money received by her. It is not claimed that there was anything in the paper or in the testimony offered in connection with it, to show that Doran was in any manner interested in it; and the question being whether Quinn purchased the property of the assignee, and paid his own money for it, and there being no dispute about this question, neither the receipt nor the testimony offered in connection with it was admissible.

The opinion of the court was delivered by

TAFT, J. I. The first question in this cause arose upon impanelling the jury. When court adjourned the first day of the trial eleven jurors had been accepted, six of the regular panel, and five talesmen. When it commenced the second day a panel, who were out on the first, were present and the eleven accepted jurors were discharged, and a panel selected from those regularly in attendance. The defendant excepted to the order of the court discharging the eleven jurors; and the question presented is, was such order error?

It is a settled rule of practice, that some prejudice to the excepting party resulting from the rulings of the court below in organizing the jury, or, at least, some infringement of the statutory provisions relating thereto, must be shown before this court will revise the proceedings of the trial court. It is within the discretion of the court to direct the clerk in calling a panel to omit the names of such jurors as are presumably disqualified or unable to serve; for example, such as have been present and listened to a former trial of the same cause, or a trial involving the same questions; those ill or whose family are; and many other instances that might be named. A wide discretion is allowed

the court in such cases; and until a panel is complete, we think a party has no vested right in any particular juror that may not be taken from him should the exigencies of the case in the discretion of the court require it. Thompson and Merriam on Juries, sec. 271, say: " So far as the formation of the jury is concerned the litigant parties have a constitutional right to demand that it shall be impartial; but this right is not impaired by the exclusion of jurors, though never so impartial, so long as impartial ones remain and try the case. And, it has been pertinently asked, what advantage would accrue to a party, should a new trial be awarded, because of the exclusion of competent jurors in his case? Obviously the only effect of granting the motion would be to take the verdict of another impartial jury. Upon the new trial he could not demand that the jurors of whose exclusion he complains should sit in the case. He has therefore suffered no injury, nor, in the eye of the law, could he be possibly benefited by another trial. This view of the law does not permit a trial judge to exclude competent jurors arbitrarily and unreasonably from participating in the trial of a cause, civil or criminal. Whenever it shall appear that the court has thus abused its discretion, a new trial will doubtless be granted." In *Phelps* v. *Hall*, 2 Tyler, 401, the court say that: "No occasion can occur to render it necessary for one juror to sit on the panel in preference to another." We think the discretion of the court below, in the case at bar, reasonably exercised. An unusual number of talesmen were upon the panel, the regular jurors were in attendance, the trial was to occupy several days; and it was much better that the regular jurors should try the case and the expense of talesmen avoided, than to retain the latter upon the panel; and as some question might arise as to the challenges, and in fact did, it was not unwise to discharge the six regular jurors and begin *de novo*. It does not appear but that the six, who were so discharged, were subsequently drawn. It is likely some of them were;

and as the defendant has already had all that he is now seeking—a trial by an impartial jury—his exception to the ruling upon this question should not be sustained.

II.  Was the transcript of Quinn's testimony admissible? While there is force in the suggestions of the defendant's counsel, we think that sec. 816 of the R. L. makes it evidence, although the stenographer described in words signs made by the witness.  What his testimony was upon the former trial could have been shown by witnesses who heard it.  See cases cited in Roberts' Digest, 285.  And the signs made by the witness are no doubt as well described by the stenographer, in his transcript, as they would have been by witnesses on the stand.

I take this occasion to note the dissent which I expressed in consultation at the former hearing, from the conclusion of the court, that Quinn was a competent witness.  The fact appeared that he was not, and could not have been cross-examined.  Thus the defendant was deprived of one of the two great tests of the truth of a witness, viz.: a cross-examination.  I should, therefore, have excluded his whole testimony, but the court held otherwise, and the statute makes a transcript made by the stenographer evidence.

The defendant was not entitled to a compliance with his request that the manner of its reproduction *materially* lessened the weight to be given his testimony.  It would have been proper for the court to have told the jury that it should have been considered by them in determining that question.  How much it lessened its weight was a question for them, not for the court.

III.  Doran became a bankrupt in December, 1877.  In March afterwards his assignee sold a stock of ready-made clothing, belonging to the estate, to the plaintiffs' intestate, Quinn.  It is claimed by the defendant that the goods in question were a part of said stock; that the sale to Quinn was a mere sham or cover; that it was really made to Doran;

that he and Quinn confederated in causing it to be made in the name of Quinn to prevent their attachment by Doran's creditors. And there was strong evidence in the case tending to support such claims, *i. e.*, tending to show that Doran was the active, and substantially the sole, participant in the purchase, control, management, and disposition of the goods. No books were kept, no account of the sales made, Doran borrowed of Quinn money to replenish the stock, no settlement was ever made between them; the goods remaining unsold were taken off by Doran in the spring of 1881; and some other facts of like tendency.

If the defendant could satisfy the jury that Quinn and Doran had conspired in the matter, and that the sale to Quinn was a sham and cover, then the acts and declarations of Doran while they were engaged in carrying out their scheme were admissible against Quinn. Having given testimony tending to establish the conspiracy, it was error to reject the testimony of the witness, Peat, of the declarations of Doran, while engaged in selling the goods. *State* v. *Thibeau*, 30 Vt. 100; *Jenne* v. *Joslyn*, 41 Vt. 478; *Lincoln* v. *Claflin*, 7 Wall. 132. The letter to Hawley, Folsom & Martin, written after the consummation of the scheme, was not admissible against Quinn. Only those declarations are admissible against other co-conspirators that are made while the common design is being carried out.

Quinn held a claim against Doran's estate based on two notes given for twenty-two hundred dollars, and the defendant offered to show the declarations of Doran that he was the owner of the claim and entitled to the dividends. The declarations were made upon an occasion when a compromise of this suit was attempted. If material, it was admissible notwithstanding the attempted compromise, it being a fact admitted because it *was* a fact. *Doon* v. *Ravey*, 49 Vt. 293. This testimony was excluded, together with that offered in connection with exhibit F, the receipt for two thousand dollars given by Quinn to Mrs. Doran at the

time of the bankrupt proceedings in December, 1877; the testimony as to the purchases and sales just prior to the bankruptcy in 1877, and exhibit E, the letter announcing Doran's insolvency. These acts and declarations of Doran are admissible in any suit against him. Whether they were admissible upon the trial below against Quinn, depended upon whether there was evidence in the case of a conspiracy between Quinn and Doran at the time the acts were done and the declarations made. We think the evidence did tend to show a combination between them as early as the fall of 1877 to prevent Doran's creditors receiving their pay, and that it existed until the goods unsold were carried off by Doran in the year 1881.

There can be no doubt as to the evidence tending to show an intent on the part of Doran to defraud his creditors; and the fact, if established, that Quinn presented large claims against the estate and at the same time held two thousand dollars of the money of Doran, which was not offset against his claims and its existence kept concealed, we think had a strong tendency to show a like intent on the part of Quinn, and a confederacy between them; in fact, there was evidence tending to show an intent on the part of both to defraud Doran's creditors at the time of the bankruptcy, and those who became creditors subsequently; so the acts and declarations of one became admissible against the other. In Bigelow on Fraud, 484, it is said: "Slight evidence of collusion or concert is sufficient to let in the declarations of one of the parties as evidence against all, though not made in the presence of each other; but there must be some evidence of the combination. Such may be inferred, for example, from the relation and conduct of the parties, and the circumstances surrounding them." Although the parties represented by the defendant were not creditors of the estate, but became creditors of Doran subsequently, we think the proceedings of Quinn and Doran may be regarded as one continuous act, they having one common design and

one object, viz.: the defrauding of Doran's creditors, his then creditors as well as subsequent ones. It is true the receipt of Quinn was given to Mrs. Doran; but the claim and offer of the defendant was to show that it was in fact. Mr. Doran's. The testimony tending to show the collusion of the parties to defraud the creditors in the fall of 1877, and until the goods were carried away became material, and should have been admitted, and consequently the acts and declarations of Doran during the same time.

The testimony as to the insurance policies, Quinn's frequent visit to the store, and the word "agent" being on the sign, was properly admitted under the opinion in this case, as reported in 55 Vt. 224.

IV. The defendant requested the court to charge the jury, *first*, that if Doran deposited five hundred dollars to secure Quinn against damages or costs in this suit, and there was evidence tending to show that he did, that it was evidence to be weighed by them as tending to show collusion in respect to the goods in question. Quinn claimed the goods and brought this suit to recover them; and the fact that indemnity was given him by Doran to secure him against an adverse result of the suit, had a tendency to show that the goods were Doran's, not Quinn's, and, as we understand, the evidence was admitted for that purpose. At the same time it might have been consistent with Quinn's having but a limited interest in the goods, that he held them as security for a sum less than their value, and Doran under an obligation to protect Quinn against loss, the latter having taken the goods as security for the amount he had advanced to buy them of the assignee; or consistent with Quinn's having sold them conditionally to Doran.

The court should not have told the jury that it was for them "to say what it (Doran's depositing the five hundred dollars to secure Quinn) tends to show," and to weigh it upon the question of fraud, if they thought it had any ten-

dency to show it. The court said: "Whether it is any evidence of fraud in the original transaction or not, is a question for the jury to consider." Whether it was *any* evidence was for the court; what weight should be given it was for the jury. The jury should have been told that it *was evidence* of fraud, and that they should weigh it with all the other evidence in the case, and determine whether fraud was proven, or whether Quinn still had an interest in the goods, either an absolute or conditional one.

The fourth, fifth, and seventh requests were fully complied with; and the defendant was not entitled to a compliance with the thirteenth, as Quinn's own testimony and exhibits in the case tended to show that he had not been paid in full for the goods. No other questions have been made in the case.

The judgment is reversed, and cause remanded for a new trial.