# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT.

DAVID W. WILLIAMS *v.* NORTON BROTHERS.

Special Term at Rutland, November, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed February 14, 1908.

*Master and Servant—Injury to Servant—Defective Derrick Cable—Evidence—Opinion of Non-Expert Witnesses— When Admissible—Declarations of Joint Tort Feasors— When Admissible Against Each Other—Witnesses—Cross- Examination—Exceptions to Charge—Whether Too Gen- eral—Negligence—Assumption of Risk—Question for Jury.*

In an action by a servant for personal injuries resulting from being struck by a wire cable that broke and fell from a derrick because of alleged unsoundness, plaintiff's witness, who had inspected the cable and testified that it was unsound in certain respects, was properly allowed further to testify that the condition he described was observable.

Plaintiff's witness, having testified that after the accident he saw on the ground near the derrick the end of a broken wire cable, and described the appearance of the ends of the wires as being "rusty, and old breaks," on re-examination was asked, "Was the end of the rope that you say appeared to come down from the sheave, was that the one you were referring to?" And he answered,

"Yes, the one that came over this side on the bank." *Held* that, though the question assumed a fact to which the witness had not testified, yet he apparently understood the inquiry to be as to which end of the cable was rusty; and the question could not have suggested the answer, for he had already testified that the piece of cable having the rusty end was lying on the bank when he saw it, the other end having fallen into the pit.

When a witness has had means of personal observation, and the facts and circumstances that lead his mind to a conclusion are incapable of being described so as to enable another person to comprehend them, the witness is often allowed to give his opinion, or his conclusion from his observation.

Plaintiff's witness, having testified that he saw the broken cable the Sunday after the accident, and having described the appearance of the broken ends and said that three of the strands were broken, upon being requested further to describe it just as he saw it, was properly allowed to answer: "There were three that were cut off, and cut off as though they were broken by using the rope, and there were only three strands that were holding the rope up."

Defendant's witness having testified that he examined the broken cable immediately after the accident, and that the break was a fresh one, it was not error to allow him to testify, in cross-examination, that he was surprised that a new and sound rope should break.

In an action by a quarry-man for personal injuries resulting from being struck by a wire cable that broke and fell from a derrick because of alleged unsoundness, although the declaration did not allege that defendants were partners, but only that they owned and were operating the quarry, the statements of one of the defendants, made about a week after the accident, but not in the presence of the other, nor to his knowledge, that the cable was "a pretty bad piece of rope," that he "would never use any more second-hand rope for cable" because "it was too dangerous," and explaining how a "kink" had developed that weakened the cable, were admissible against that defendant, but not against his associate; for, although defendants were engaged in a common enterprise in furtherance of which each was the agent of the other, those declarations were not made in the course of their joint business, and it was error to instruct the jury that they might consider them against both defendants, if they found that they were made in and about the business in which the defendants were jointly interested.

In an action by a quarry-man for personal injuries resulting from being struck by a wire cable that broke and fell from a derrick because of alleged unsoundness, where the evidence tended to show that the cable was defective at the point where it broke; that the defect could have been discovered by inspection, but that it was not properly inspected; that plaintiff had no occasion to examine the cable, which was far above him when he was at work, the questions whether defendants were negligent and whether plaintiff was chargeable with knowledge of the danger were properly submitted to the jury.

Where the bill of exceptions shows that defendants submitted ten requests for instructions to the jury, and excepted "to the refusal of the court to charge as requested and to the charge as given upon the subject of the requests and to those portions of the charge detailed herein," and the detailed excerpts from the charge are such as show that defendants called the attention of the trial court directly to the parts of the charge that they claimed contained error, the exception is not too general to be available. *White* v. *Lumiere etc. Co.*, 79 Vt. 206, distinguished.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1906, Rutland County, *Miles*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

This is an action to recover damages for an injury received by plaintiff who was employed by defendants as a quarry-man, in consequence of an accident to a derrick called "an incline," in defendants' slate quarry in Pawlet, Vermont. Plaintiff's evidence tended to show that he was injured by being struck by a falling wire cable that had broken at some point many feet above his head; that the break was caused by defendants' negligence in that either the cable was defective when installed, or that it had become defective, and its use thereafter continued, through failure of defendants properly to inspect it. The witness Baker answered in the affirmative the cross-question recited in the opinion.

*Hunton & Stickney, P. M. Meldon,* and *Stickney, Sargent & Skeels* for the defendants.

The declarations of defendant Norton, made to witness Staples were inadmissible against either defendant. They are merely a narrative of past events and a statement of one defendant's opinion, made in the absence and without the knowledge of the other defendant. 1 Greenl. Ev. §112; *State* v. *Thibeau,* 30 Vt. 100.

*Butler & Moloney* for the plaintiff.

The evidence tended to show that plaintiff's injury was due to such failure to inspect and care for the derrick as resulted in affording plaintiff an unsafe place in which to work. Such a danger is an extraordinary one not assumed by plaintiff as incident to his employment. *Drown* v. *N. E. T. & T. Co.,* 80 Vt. 1; *Dunbar* v. *C. V. Ry. Co.,* 79 Vt. 474; *Morrisette* v. *C. P. Ry. Co.,* 74 Vt. 232; *Houston* v. *Brush & Curtis,* 66 Vt. 331.

TYLER, J. This action was brought to recover damages for injuries received by the plaintiff while at work in the defendants' slate quarry.

1. In the course of the trial a witness, Staples, testified that a cable or wire rope, which fell and injured the plaintiff, was unsound in certain respects. He was then asked by the plaintiff's counsel whether or not the condition that he had described was observable, one that might be observed by looking at it. The question called for the knowledge of the witness derived from his observation, whether it was a patent condition or a latent defect. The answer that it was an observable condition was properly received.

2. Witness Pritchard, called by the plaintiff, testified that, on the day of the accident he was at work at the quarry on which the broken incline was situated; that after the accident occurred he went to the place where the mast which had supported the incline stood, and that he saw there a broken end of wire cable lying on the ground, and described the appearance of the ends of the wires in the cable "as being rusty, and old breaks."

On re-examination he was asked: "Was the end of the rope that you say appeared to come down from the sheave, was that the one you were referring to?" The witness answered: "Yes,

the one that came over this side, on the bank.'' It is true that the question assumed a fact that the witness had not testified to, but he apparently understood counsel to inquire which end of the rope was rusty. The question cannot be said to have suggested the answer, for the witness had before stated without objection that the piece of rope, the end of which he claimed was rusty, was lying on the bank when he saw it, the other piece having fallen into the pit.

3. Bardwell, a witness for the plaintiff, testified that he went to the place the Sunday after the accident, saw the broken cable, described the appearance of the broken ends and said that three of the strands were broken, and upon being requested to describe it just as he saw it, said: ''There were three that were cut off, and cut off as though they were broken by using the rope, and that there were only three strands that were holding the rope up.'' The defendants excepted to that part of the answer that gave the witness' conclusion as to how the strands were broken. It was not error in the court to allow the answer to stand. It was within the rule in *Cavendish* v. *Troy*, 41 Vt. 108, that where the witness has had means of personal observation, and the facts and circumstances which lead the mind of the witness to a conclusion are incapable of being described so as to enable any one but the observer himself to form an intelligent conclusion from them, the witness is often allowed to add his opinion or the conclusion of his own mind. It is permissible for a witness to testify as to the appearance of objects that he has seen. *Crane* v. *Northfield*, 33 Vt. 124; *Oakes* v. *Weston*, 45 Vt. 430. In *Bates* v. *Sharon*, 45 Vt. 474, it was held not error to permit a witness, who had examined certain gullies in a highway, to state that from their appearance they had been there several days.

5. Baker, a witness called by the defendants, had testified that he went to the place immediately after the accident and saw the broken cable, and that it was a fresh break. Much latitude is allowed in cross-examination, and it cannot be held as matter of law that it was error to permit the plaintiff's counsel to ask the witness if he was not surprised that a new and sound rope should break.

6. Several exceptions relate to the alleged declarations of defendant, Eugene R. Norton, to the witness Staples concerning the cause of the accident. The plaintiff's evidence tended to

show that his injury was caused by being struck by a falling cable which had broken at a point forty or fifty feet above him, and he claimed that the break was caused by the defendants' negligence, either in that it was a defective cable when it was placed there, or had become defective by use, and that the defendants were negligent in not discovering the defect by proper inspection and in continuing to use it without such inspection. Staples' testimony was that he went to the quarry in the week following the accident in company with said defendant, who then said to him that it was "a pretty bad piece of rope," and that "he would never use any more second hand rope for cable;" and upon being asked the reason, replied that "it was too dangerous;" that he further said that when he had worn out the rest of the second hand rope he would equip the plant with new rope, either an inch and a half or an inch and three-fourths in diameter; that he also said that after the "cave-in," which had recently occurred, he had set the incline back fifteen or twenty feet, and that in the portion of the rope that ran over the sheave, by remaining there so long, a kink was left where the weight came on it which gave it a tendency to break quicker than it otherwise would.

These declarations were not made in the other defendant's presence, nor to his knowledge, nor in the course of any business in which the defendants were then jointly interested, and they contend that the declarations were merely a narrative of past events, also that they were only the expression of an opinion by defendant Eugene Norton. The exception to the admission of these declarations, so far as they affect the liability of the defendant who made them, is not well founded. As they came from a party the statement about the condition of the cable was more than the expression of an opinion and must be taken to have been made from the party's knowledge. *Chamberlin* v. *Rankin,* 49 Vt. 133.

Admissions of a party against his interest are competent in negligence cases as in other cases. 6 Thomp. on Neg. 7738. Admissions, says Prof. Wigmore, are prior assertions of a party, which, being inconsistent with his present claim, serve now to discredit by their discrepancy. "If a party has chosen to talk about a particular matter, his statement is evidence against himself." 1 Greenl. Ev. §169, quoting Chief Barron Pollock in *Darby* v. *Ousley,* 1 H. and N. 1.

The question is, were these statements, if made, admissible as tending to show negligence by both defendants?

The defendants are not declared against as co-partners, but the declaration alleges that, at the time of the accident, they owned and were operating a slate quarry and were engaged in excavating slate etc., therefrom. It is immaterial, as affecting their liability, whether their relations to each other were strictly those of co-partners, or whether they were otherwise jointly interested in the business.

It is laid down in 1 Greenl. Ev., 16th ed. 184 b, that whenever any number of persons associate themselves in the joint prosecution of a common enterprise or design, conferring on the collective body the attribute of individuality by mutual compact, as in commercial partnerships and similar cases, the act or declaration of each member, in furtherance of the common object of the association, is the act of all; that by the act of association each is constituted the agent of all.

Assuming, as we may, that the defendants were engaged in a common enterprise, as co-partners or otherwise, then each was the agent of the other in the furtherance of the object of their association. But a statement by one, after an accident occurred. as to the manner in which it occurred, could not render his associate in business liable. The rule in respect to admissions of agents then applies, for as Greenleaf says, the rule rests upon the doctrine of agency. So it is uniformly held that an admission or statement made by an agent after an accident has occurred, in reference to the cause of it, is not competent evidence against the employer of such agent. Such declarations, in order to be admissible, must accompany the principal act and be a part of the *res gestae.* 6 Thomp. on Neg. 7738.

The declarations of an agent against his principal must have been made at a time when the agent was engaged in the discharge of a duty owing to his principal.

Thus, statements as to the manner in which an accident occurred, made by the president of a construction company, to a newspaper reporter several hours after an accident were held inadmissible against the company. 6 Thomp. 7741, citing *Chewning* v. *Eusley,* 100 Ala. 493. For the same reason the declarations of an employee of a railroad company made after an accident occurred, as to the manner in which it occurred, were held inadmissible. *Verry* v. *Bur. etc. R. Co.,* 47 Ia. 549; *Chat-*

*tanooga etc. R. Co.* v. *Liddell,* 85 Ga. 482. This is also the rule as applied to the declaration of one co-trespasser where several are jointly sued. Such declaration may be given in evidence against himself, at whatever time it was made, but if it was not part of the *res gestae,* its effect is to be restricted to the party making it. The declaration or admission of one of several co-trespassers must be made in connection with acts in furtherance of the common purpose. *State* v. *Thibeau,* 30 Vt. 105; *Jenney* v. *Joslyn,* 41 Vt. 484; *Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt. 294. The same rule applies in criminal conspiracies.

Several other exceptions were taken to the rulings which need not be considered, as they were upon matters not likely to arise in another trial.

8. The defendants' motion for a verdict was properly denied. The case shows that the plaintiff was at work for the defendants as a quarry-man; that a cable extending over the quarry broke and fell, injuring him. There was evidence tending to show that the cable was defective at the point where it broke; that the defect could have been discovered by inspection, but that it was not properly inspected by the defendants; therefore it was a question of fact for the jury to determine whether or not the defendants were guilty of negligence in respect to the cable.

9. Whether they did all that they could to make the place where the plaintiff worked *reasonably* safe was also for the jury to determine.

It appeared that the plaintiff's work as a quarry-man was in the pit trimming stones that other workmen drew up the incline in a car; that the plaintiff did not operate the car or use it except that he rode in it in going to and from his work; that he had no occasion to examine the cable, which was far above him when he was at work, though near him as he rode up and down in the car. Whether he had an opportunity to see defects or was chargeable with knowledge of them were questions of fact for the jury to determine upon all the evidence. *Severance* v. *New England Talc Co.,* 72 Vt. 181.

10. The defendants submitted ten requests to the court for instructions to the jury. At the close of the charge the defendants took the following exception:

"To the refusal of the court to charge as requested and to the charge as given upon the subject of the requests and to

those portions of the charge detailed herein the defendants except.''

*White* v. *Lumiere No. Am. Co. Ltd.*, 79 Vt. 206, is conclusive that the exception relative to the requests is too general to avail the defendants. The only question is whether the further exception, ''to those portions of the charge detailed herein,'' can be considered.

The defendants have copied into the exceptions certain excerpts from the charge in order to call the attention of this Court directly to them. Upon referring to the record we find that the defendants called the attention of the trial court directly to the matters in the charge which they claimed contained error. Therefore the exceptions are available.

The defendants have no occasion to complain of that part of the charge that related to the plaintiff's assumption of risks. The instruction was that he assumed all the risks and dangers that he saw and comprehended, and all that he could have discovered in the exercise of ordinary care, all that he ought to have known in the exercise of ordinary prudence.

The court instructed the jury that the defendants were bound to exercise ordinary care and prudence in providing a safe place for the plaintiff to perform his work; that the care required of them depended upon the risk and danger of the plaintiff's employment; that they were required to use the care of careful and prudent men, having reference to the situation and circumstances. This was a correct statement of the law.

The instruction upon the subject of the alleged admissions of defendant, Eugene Norton, was that he being a party, his declarations, if made, might be used as impeaching testimony and also ''as evidence of the existence of the fact stated.'' In a subsequent paragraph the instruction was, * * * * ''that in order for those declarations to bind both defendants, you must find that they were jointly interested in the matter concerning which the declarations were made, and that the party making the declarations at the time made them in and about the business of the two men in which they were jointly interested, and in their interest, and if you find that they were so made, you may consider those declarations, if you find they were made, in arriving at the facts in this case, as against both defendants.'' There was error in this statement as has been shown in our consideration, in point 7, of the admissibility of declarations

of co-partners and co-trespassers. The charge was not warranted by the evidence.

The basis of the rule, admitting the declarations of one co-partner or co-trespasser in evidence against all who are so associated, is agency. What either said in furtherance of the common design, in the joint prosecution of the common enterprise, is admissible against all. But one co-partner or co-trespasser is not the agent of his associates to make declarations after an accident as to the manner in which it occurred.

*Judgment reversed and cause remanded.*