PETER BILODEAU'S EXRX. *v.* MOOSE RIVER LUMBER COMPANY.

October Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed May 6, 1916.

*Master and Servant—Injuries to Servant—Negligence of Master—Question for Jury—Scope of Employment—Master's Duty to Inspect—Safe Working Place—Master's Nondelegable Duty—Defective Appliances.*

In an action for the wrongful death of the assistant millwright of a sawmill, caused by the breaking of a chain under strain, owing to an improperly welded "blacksmith's link" therein, which could readily have been discovered by careful inspection, but not otherwise, the question of the employer's negligence was for the jury.

The assistant of a millwright, the latter having charge of the machinery at a sawmill, did not, as a mere incident of his employment, assume the master's duty to inspect a chain steadying posts that supported a waste conveyer, even though it was the millwright's duty so to inspect.

In an action for the wrongful death of an assistant millwright caused by the breaking of a chain under strain, owing to an improperly welded "blacksmith's link" therein, the question whether it was deceased's duty to inspect the chain *held* for the jury under the evidence.

A device for taking up the slack in the endless chain of a waste conveyer at a sawmill, which frequently came off the sprocket, owing to the length of the chain, was not a device to repair the conveyer, but a part of the permanent equipment of the mill, which it was the master's duty to see properly installed and afterwards reasonably inspected.

The duty of a master to select a proper chain, which was a part of a device for taking up the slack in the endless chain of its waste conveyer when the chain got off the sprocket, to install the device in a proper manner and thereafterwards reasonably to inspect it was nondelegable, so that the master was liable for the death of its assistant millwright caused by a defective chain negligently selected and installed by the millwright.

Where it is the servant's duty, by the terms of his employment or the
nature of his work, to inspect and keep in order the appliance with
which he works, the master is not liable for injuries to the servant
caused by defects that he might have discovered and remedied,
and this, not because of contributory negligence, but because the
master owed the servant no duty in respect of what caused his in-
jury.

CASE for negligence. Plea, the general issue. Trial by
jury at the April Term, 1915, Essex County, *Miles,* J., presid-
ing. Verdict and judgment for the plaintiff. The defendant
excepted. The opinion states the case.

*Drew, Shurtleff, Morris & Oakes* for the defendant.

*Porter, Witters & Harvey* for the plaintiff.

TAYLOR, J. Plaintiff seeks to recover damages for the
death of her husband, Louis Bilodeau, who was employed by
defendant in its sawmill at Lowelltown, Maine. In the opera-
tion of the mill the waste, consisting of sawdust and edgings,
was carried some distance from the mill by means of a conveyer
where it was burned. The conveyer consisted of an iron spout
about 200 feet long set on an incline, the end where the waste
was ejected being about 20 feet from the ground. A few feet
from the end of the spout were two iron posts which supported
it and extended some four feet above the spout. Sheets of
metal were set up against these posts to protect the woodwork
of the conveyer from the burning waste. At a time when the
conveyer was being built over, a chain, selected by one Smith,
defendant's boss millwright, had been placed around the pro-
jecting ends of the iron posts near the top for the purpose of
steadying the posts and preventing their spreading. Thus this
chain was some four feet above the spout and at right angles to
it. It was a three-eighths inch cable chain which had previously
been used to hold up the spout, and, in its former position, had
been subjected to the heat from the burning waste. The outer
end of the spout was supported by two railroad rails, connected
together, extending beyond the upright iron posts. There was
nothing for a person who had to go upon that part of the con-
veyer to stand upon except these rails; and nothing for him

to take hold of except the sides of the spout, which extended about two feet above the rails.

The waste was carried through the conveyer by means of an endless chain or cable with lugs or buckets attached. The cable ran in the bottom of the spout and passed over a sprocket at the extreme outer end of the conveyer. The cable would frequently come off the sprocket, when it became necessary to go onto the conveyer to replace it. Originally this was done by the workmen going onto the conveyer and pulling the cable until sufficient slack was secured to permit its being replaced. Some three or four months before deceased met his death a mechanical device had been installed to make this operation easier. This device was constructed under the direction and supervision of defendant's millwright. A hand winch was attached to the framework of the conveyer between the mill and the upright iron posts; tackle blocks were attached to the chain connecting the top of the posts, and one end of the rope passing through the blocks was attached to the winch and the other end, when in use, was attached to the conveyer cable. Thus by turning the winch the cable would be drawn up and the necessary slack secured. This operation usually required four men; two at the winch, one at the sprocket, and another at some intermediate point to transmit signals from the man at the sprocket to the men at the winch.

The machinery at the mill was in charge of the boss millwright. Deceased was employed as an oiler and as assistant millwright. He had been employed in this capacity at defendant's Lowelltown mill about two years at the time of his death, and had previously worked for defendant in the same capacity in another mill for about three years. His duties required him to go onto the conveyer daily to oil the sprocket and at other times to assist in replacing the cable when it came off, which occurred frequently, often several times a day. On the day of the accident the cable came off the sprocket and deceased with Smith and two other workmen went onto the conveyer to replace it. He was directed by Smith, who was at the sprocket, to take a position on the rail supporting the spout near the upright posts to give directions to the men at the winch. He had signalled them to give Smith a little more slack. The additional strain on the cross chain to which the tackle blocks were attached caused it to give away; and the chain or blocks hit deceased,

causing him to fall headlong to a pile of rocks below.    The fall fractured his skull, from which injury he died almost instantly.

The negligence complained of was in furnishing a defective chain and failure to inspect the same; and the defect claimed was an imperfectly welded link.

At the close of the evidence defendant moved for a directed verdict on several grounds which may be summarized as follows:

1.    Failure to show negligence on the part of defendant.

2.    Because on the evidence deceased was guilty of contributory negligence.

3.    Because on the evidence deceased assumed the risk.

The case is here on defendant's exceptions to the overruling of its motion.

In several particulars the evidence was conflicting; but, giving the plaintiff the benefit of the most favorable view, there was evidence tending to show that the occasion of the cross-chains giving away was a defective link; that it is what is called "a blacksmith's link" where the chain had at some time been mended; that the link had not been properly welded and, under the strain that was placed upon it, stretched or pulled apart; that the defect could readily have been discovered on careful inspection, but was not so obvious as to be observable without it; that from a little distance the chain looked strong enough, though somewhat rusty; that the chain had not been inspected after it was installed; that deceased had nothing to do with selecting the chain when it was put onto the posts, nor with attaching the tackle blocks to it when the winch was installed.    On these facts the question of defendant's negligence was for the jury.    *Williams* v. *Norton Bros.*, 81 Vt. 1, 69 Atl. 146.

It was claimed that on the evidence it was deceased's duty to inspect the chain to see that it was in suitable repair; that the court should take notice that it would be one of the duties of a millwright to inspect the chain.    If inspection would be the ordinary duty of the millwright, (a question we do not decide), deceased was only the millwright's assistant.    In the absence of any evidence of such an undertaking, clearly he could not be held to have assumed the master's duty in that regard as an incident of his employment.    There was no direct evidence that deceased was under any obligation to inspect the chain.    Some of plaintiff's witnesses testified that Smith had charge of all the machinery including the conveyer; another that, if the conveyer

13

got out of order, it was the duty of deceased and Smith to fix it. One Gray, defendant's then superintendent, testified in direct examination that it was deceased's duty to see that the machinery was all in perfect order, and to repair same if it was a small matter, otherwise to report to Smith. The same witness testified on cross-examination that Smith had complete charge of looking after repairs when he was around and that deceased was subject to his orders. On all the evidence the question of deceased's duty to inspect the chain was for the jury. The question was submitted to them under a charge that was not complained of and they have found that there was no such duty resting upon him.

Defendant relies upon *Garrow* v. *Miller,* 72 Vt. 284, 47 Atl. 1087, and argues that the defective appliance was merely an instrumentality provided to assist in repairing another instrumentality of the business; that the place where deceased was killed was not a work place. *Garrow* v. *Miller* was a staging case and not at all like the case at bar. That it does not come within the rule there laid down, is apparent when we consider that here the contrivance had been installed, and in almost daily use for several months, to facilitate work which for a long time previously has been done by hand. It is reasonable to assume that owing to the length of the cable it was not practicable to prevent its frequently coming off the sprocket. This device was not employed to repair the conveyer, but was part of the permanent equipment which it was the defendant's duty to see properly installed in the first instance and afterwards reasonably inspected to prevent its getting out of repair.

It is claimed that, as the chain was selected by the millwright and the device installed under his directions, the negligence, if any, was that of a fellow servant. But the duty to select a proper chain and to install the device in a proper manner, as well as the duty of reasonable inspection, were nondelegable duties; so the case does not come within the fellow-servant rule. *Lossasso* v. *Jones Bros. Co.,* 88 Vt. 526, 93 Atl. 266, and cases cited.

The question of contributory negligence in its true sense is not presented in defendant's brief. It is argued in support of this ground of the motion that deceased helped Smith to install the winch; that it was the duty of both Smith and deceased to see that it was installed and maintained in a reasonably safe

condition; that defendant relied upon them to do this; that if there was any defect in the chain, it was deceased's duty to discover it; and that his failure to do so was negligence. This argument brings us around to the question of defendant's negligence; and the hypothesis on which it is based makes a case of no negligence on its part, so far as the deceased is concerned. If, as assumed, the injury resulted from deceased's own failure of duty, he would be denied a recovery, not because of contributory negligence, but because, as to the matters complained of, defendant owed him no duty. Where it is the servant's duty by the terms of his employment, or by reason of the nature of the work, to inspect and keep in order the appliances with which he is required to work, the master is not liable for injuries caused by defects which the servant might have discovered and remedied upon proper inspection, the fault being the servant's and not the master's. 26 Cyc. 1252-1254 and cases cited.

All that is said in the brief about assumption of risk is that the burden is on the plaintiff to show that deceased did not assume the risk, which she has wholly failed to do. Our attention is nowhere directed to the evidence bearing upon this question. There was evidence on this point of the same character that was held admissible in *Barney's Admrx.* v. *Quaker Oats Co.,* 85 Vt. 372, 82 Atl. 113; and, as its sufficiency to make a case for the jury is challenged only by the sweeping assertion that plaintiff has wholly failed to sustain the burden on that issue, we do not regard the question as sufficiently briefed to require further attention.

The exception to the action of the court in denying defendant's motion for a directed verdict cannot be sustained. The other exceptions taken at the trial are not relied upon.

*Judgment affirmed.*